Eileen Rothschild WELTZ,
et al., Plaintiffs,

v.

Charles R. LEE, Edwin L. Artzt, James R. Barker, Edward H. Budd, Robert F. Daniell, Kent B. Foster, James L. Johnson, Richard W. Jones, James L. Ketelsen, Michael T. Masin, Sandra O. Moose, Russell E. Palmer, Robert D. Storey and GTE Corporation, Defendants.

Robert P. Sugarman, individually and on behalf of all others similarly situated, Plaintiff,

v.

Charles R. Lee, et al., Defendants.

Ronald D'elia, et al., Plaintiffs,

v.

Charles R. Lee, et al., Defendants.

Richard A. Panzella, Plaintiff,

v.

Charles R. Lee, et al., Defendants.

Thomas Gladstone, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Charles R. Lee, et al., Defendants.

Nos. 00 Civ. 3863(DAB), 00 Civ. 4021(DAB), 00 Civ. 4117(DAB), 00 Civ. 4557(DAB), 00 Civ. 5224(DAB).

United States District Court,
S.D. New York.

March 7, 2001.

## MEMORANDUM & ORDER

BATTS, District Judge.

Pending before this Court are five securities fraud class actions against GTE Corporation (hereafter "GTE") and certain of its officers and directors. Each action alleges that Defendants made materially false and misleading statements in a proxy statement in violation of section 14(a) and section 20 of the Securities Exchange Act of 1934 (the "Exchange Act"). The five actions are as follows:

*Weltz, et al. v. GTE Corp., et al.,* 00 CIV 3863 (the "Weltz Action");

*Sugarman v. GTE Corp., et al.,* 00 CIV 4021 (the "Sugarman Action");

*D'elia v. GTE Corp., et al.,* 00 CIV 4117 (the "D'elia Action");

*Panzella v. GTE Corp., et al.,* 00 CIV 4557 (the "Panzella Action");

*Gladstone v. GTE Corp., et al.,* 00 CIV 5224 (the "Gladstone Action").

Presently before this Court are two competing motions for the appointment of Lead Plaintiff(s) and selection of Lead Counsel. Specifically, pursuant to the Private Securi-

ties Litigation Reform Act of 1995 (hereafter "PSLRA") (codified at 15 U.S.C. §§ 77–78), Daniel Gildenberg, Arnold and Barbara Hollander, Peyton Kulman, Ronald Lebby, Ronald Nelson, Park East, Inc., and Mark Weistein, together with additional class member movants (collectively the "Weinstein Plaintiffs Group" of the Weltz Action), move to (i) consolidate all five and any subsequent related actions; (ii) appoint the Weinstein Plaintiffs Group,[1] as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve the Weinstein Plaintiffs Group's choice of Chimicles & Tikellis LLP to serve as Lead Counsel and chair of an executive committee; Wolf Haldenstein, Goodkind Labaton, and Stull, Stull & Brody to serve as members of an executive committee; and Wolf Haldenstein to serve as Liaison Counsel.

Class member Vera Rony (hereafter "Rony") of the D'elia action joins in the motion for consolidation of the Actions, but otherwise opposes the Weinstein Group's motion, moving instead (i) to be appointed Lead Plaintiff, and (ii) for the approval of her selection of Lead Counsel ("Milberg Weiss") for the class.

## I. BACKGROUND

In sum, the five complaints, filed between May and July, 2000, allege that on or about April 14, 1999, GTE disseminated a proxy statement to its shareholders (the "Proxy Statement"), which sought the approval of GTE shareholders for a merger, pursuant to which Bell Atlantic acquired GTE in a transaction valued at approximately $53 billion. Plaintiffs allege that the Proxy Statement materially misstated the dividend policy of the combined Bell Atlantic–GTE entity, to their monetary detriment.[2]

In accordance with the requirements of the Private Securities Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4, the Weinstein Plaintiffs Group published notice of the pendency of their *Weltz* action over the *Business Wire* on May 23, 2000. (*See* Nespole

---

1. Or alternatively, two of its members: Mark Weinstein and Arnold and Barbara Hollander, who hold jointly.

2. A related state action is pending in New York Supreme Court, challenging aspects of the Merger.

Aff. at Ex. F.) Since the filing of the *Weltz* Complaint, four other class action complaints arising out of the same facts and alleging virtually identical claims have been filed in the Southern District of New York.[3] Both the Weinstein Group and class member Rony filed their motion for consolidation and for appointment of their respective Lead Plaintiff and Lead Counsel on July 24, 2000. No other class member in any other related action has made any motions for consolidation or appointment of Lead Plaintiff and Counsel. Defendants GTE do not oppose consolidation of the five cases, nor do they take any position with respect to who should be the Lead Plaintiff or Lead Counsel for purposes of the instant litigation. (Def.'s Mem. Law at 3.)

## II. DISCUSSION

### A. Motion to Consolidate

■ Both the Weinstein Group and Rony move for consolidation of the five related actions, and any subsequently filed related actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). "In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (quoting *Lloyd v. Indus. Bio-Test Lab., Inc.*, 454 F.Supp. 807, 812

(S.D.N.Y.1978)). Both the Weinstein Group and Rony assert that the related actions involve common questions of law and fact. (Weinstein Mem. Law at 12–13; Rony Mem. Law at 3.)

■ The claims alleged in the five cases are identical in that they name the same Defendants and involve the same factual and legal issues. They are each brought by investors who held GTE shares during the time of the shareholder vote on the Merger, and each allege injury arising from the exact same Proxy Statement. Accordingly, the Court finds that the five actions involve common questions of law and fact, and that in the interest of judicial economy these cases shall be consolidated.

### B. Motion For Lead Plaintiff

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. The purpose behind the PSLRA was to prevent "lawyer-driven" litigation, and to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y.1998); *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997).

Accordingly, the PSLRA amended the Exchange Act by altering the procedures for bringing such class actions. *In re Oxford Health Plans*, 182 F.R.D. at 43. The PSLRA requires plaintiffs filing a securities fraud class action complaint to publish notice of the pendency of the suit no later than twenty days after the filing date. 15 U.S.C. § 78u–4(a)(3). No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). If a motion for consolidation has been made, the Court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u–4(a)(3)(B)(ii).

---

**3.** See discussion supra at 130.

In addition to amending filing procedures, the PSLRA requires Courts to take a more active role in supervising the process of selecting lead plaintiffs. *See D'Hondt v. Digi Int'l*, Nos. Civ. 97–5, Civ. 97–295, Civ. 97–156, Civ. 97–538, Civ. 97–351, Civ. 97–440, 1997 WL 405668, at *2 (D.Minn. Apr. 3, 1997) ("the Reform Act mandates greater Court supervision in the selection of claimants, who will control the prosecution of such claims, and in the decision, by those claimants, to retain the assistance of legal counsel to prosecute their claims").

The PSLRA provides that:

> [T]he court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff").

15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a notice ...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

This presumption may be rebutted only by proof by a member of the purported class "that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The Weinstein Group argues that it satisfies the requirements of the Exchange Act in that its aggregation of class members has the largest financial interest in the outcome of this litigation, at 13,191.64 shares of GTE stock as of March 29, 2000, and is a typical and adequate representative of the proposed Class pursuant to Rule 23. *See* Pl.'s Mem. Law at 7–11. Rony responds that while the Weinstein Group represents the largest financial interest collectively, a group of seven unrelated individuals is too large to lead effectively this litigation and her interest of 4,000 shares of GTE stock should be deemed the largest financial interest for the purposes of the PSLRA. (Pl.'s Mem. law at 4–8.)

■ The pivotal issue as to the designation of Lead Plaintiff in the instant matter, then, comes down to whether multiple class members may aggregate their financial stake in order to establish the PSLRA's rebuttable presumption. Courts applying the Act are divided on the issue, with some holding that only a single lead plaintiff would realize the larger goals of the PSLRA. *See, e.g., In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997) (finding that to allow an aggregation of unrelated plaintiffs to serve as lead plaintiff contravenes the PSLRA's purpose of eliminating lawyer-driven litigation).

The majority of courts, however, have permitted the aggregation of claims for the purposes of becoming lead plaintiff. While the Second Circuit has not ruled on this issue, there are cases in the Southern District of New York. *See, e.g., In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424, 436 (S.D.N.Y.2000) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 45–48 (appointing three lead plaintiffs); *see also Yousefi v. Lockheed Martin Corporation*, 70 F.Supp.2d 1061, 1066–67 · (C.D.Cal.1999) (holding PSLRA does not prohibit groups of plaintiffs from collectively moving for appointment as lead plaintiff); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 353 (S.D.Cal.1998) (allowing the aggregation of six plaintiffs); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 409 (D.Minn.1998) (aggregating six plaintiffs); *D'Hondt*, 1997 WL 405668, at *2 (appointing 21 class members as lead plaintiffs). Moreover, the PSLRA itself clearly contemplates the appointment of multiple plaintiffs to manage the litigation. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (stating

Court must appoint the "person or group of persons" that meets the PSLRA's rebuttable presumption's requirements).

This Court recognizes that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA. See *Mitchell v. Complete Management, Inc.*, No. 99–1454, 1999 WL 728678, at *3 (S.D.N.Y. Sept. 17, 1999). Thus, this Court finds that the aggregation of more than one plaintiff for the purpose of moving for appointment of Lead Plaintiff is not facially invalid.

There are, however, outer limits to the number of plaintiffs allowed to proceed as lead plaintiff, in that there exists a point at which the Act's express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group. See e.g., *Complete Management, Inc.*, 1999 WL 728678, at *3 (finding that naming a group of 141 class members as lead plaintiff undermines the purpose of having a lead plaintiff); *Yousefi*, 70 F.Supp.2d at 1067 (holding that appointing 137 lead plaintiffs would frustrate the PSLRA's purposes); *In re Advanced Tissue Sciences Sec. Lit.*, 184 F.R.D. 346 (S.D.Cal. 1998) (denying motion to appoint 250 unrelated class members as lead plaintiffs).

■ The Weinstein Plaintiffs Group is presumptively the most adequate plaintiff. Its aggregation of seven GTE shareholders[4] does not present a group so cumbersome as to deliver the control of the litigation into the hands of the lawyers. The Weinstein Plaintiffs Group filed a complaint and made a motion to be Lead Plaintiff in satisfaction of § 21D(a)(3)(B)(iii)(I)(aa) of the Exchange Act, and is the "person or group of persons" that has the largest financial interest, with 13,191.64 shares of common stock.

The Court also makes a preliminary finding that the Weinstein Plaintiffs Group meets § 78u–4's preliminary showing standard of

Rule 23's typicality and adequacy requirements. See *Yousefi*, 70 F.Supp.2d at 1071 (lead plaintiffs need only make a preliminary showing that they satisfy the requirements of Rule 23); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286 (E.D.N.Y.1998) (noting the preliminary showing at this stage of the litigation need only be to the typicality and adequacy requirements of Rule 23); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D.Tex.1997) (same).

Because the Weinstein Plaintiffs Group were all members of the class, i.e. shareholders of GTE on March 29, 1999, and will state identical claims arising out of the allegedly false Proxy Statement, their claims arise from the same "course of conduct" and thereby meet the typicality requirement. *In re Oxford Health Plans*, 182 F.R.D. at 50 ("[typicality is satisfied where the claims] arise from the same conduct from which the other class members' claims and injuries arise.") (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The adequacy requirement will be satisfied where (1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members to not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy. *In re Olsten*, 3 F.Supp.2d at 296. The Weinstein Plaintiffs Group has a significant interest in the outcome of the litigation and its counsel is well-qualified to pursue the litigation. Moreover, no evidence exists to suggest that the Weinstein Plaintiffs Groups's interests are antagonistic to other members of the class or their attorneys. Accordingly, this Court is satisfied that the Weinstein Plaintiffs Group meets the adequacy requirement. Notably, however, because § 78u–4 only requires preliminary class certification findings, the Court does not preclude any party from contesting the ultimate class

---

4. In a reply briefing, the Weinstein Plaintiffs Group propose the appointment of only two of its members as an alternative to the seven-member grouping. See Weinstein Mem. Law in Opposition at 2. As the Court finds the seven member group to meet the PSLRA mandate, the alternative is rejected. It should be noted, however, that this Court is empowered to consider the proposal, notwithstanding Rony's argument that the proposal is untimely, through a sua sponte modification. See, e.g., *Oxford*, 182 F.R.D. at 43–46; *Yousefi*, 70 F.Supp.2d at 1070.

certification on the basis of the determinations made in the instant petition.

In sum, the Weinstein Plaintiff Group's motion to be appointed as Lead Plaintiff is granted. The Rony motion is accordingly denied.

## C. Appointment of Lead Counsel

■ The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The Court, however, can interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

The Weinstein Plaintiffs Group has selected Chimicles & Tikellis to serve as Lead Counsel and chair of an executive committee; Wolf Haldenstein, Goodkind Labaton, and Stull, Stull & Brody to serve as members of an executive committee; and Wolf Haldenstein to serve as Liaison Counsel. In addition, fifteen other law firms are listed as proposed executive committee members, a committee whose power and function with relation to Lead Counsel is vague at best. The Weinstein Plaintiffs Group argues that proposed counsel are the same group of law firms that represented plaintiffs in the related state action, and thereby proposed counsel are already familiar with the facts of this case.

Of that this Court has no doubt, but nonetheless, the Court finds that the PSLRA would be better served by the appointment of one law firm to manage the case. *See, e.g., In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 230–1 (D.D.C.1999) (denying proposed four-firm lead counsel structure). As discussed above, one of the central purposes of the PSLRA is to enable plaintiffs to control counsel. In fact, a similar convoluted structure of Lead Counsel, Liaison Counsel, and Executive Committee was only appointed in a major and complex securities action involving 54 separate actions consolidated by Order of the Judicial Panel on Multidistrict Litigation. *See In re Oxford Sec. Lit.*, 182 F.R.D. at 42. The instant action, in contrast, involves a single misrepresentation in connection with a single transaction and is not so unduly complex as to justify such a structure. The large and convoluted structure proposed could cause exactly the kind of duplication of effort, increased attorneys' fees, friction or lack of coordination among counsel, and concomitant delay in the litigation which the PSLRA was enacted to combat in the first place.

Upon review of the four firms' resumes, the Court finds that they all have substantial experience and success in prosecuting securities fraud class actions. Within 30 days of this Order, the Weinstein Plaintiff's Group is hereby directed to propose one firm as Lead Counsel.

## III. CONCLUSION

Having considered the motions for Appointment of Lead Plaintiffs and Lead Counsel Pursuant to Section 21D of the Securities Exchange Act of 1934 and for Consolidation of the Actions Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED THAT:

1. The Motion to Consolidate Cases for All Purposes is GRANTED;

2. The following actions are hereby consolidated for all purposes, including pretrial proceedings, trial and appeal, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure:

*Weltz, et al. v. GTE Corp., et al.*, 00 CIV 3863 (the "Weltz Action");

*Sugarman v. GTE Corp., et al.*, 00 CIV 4021 (the "Sugarman Action");

*D'elia v. GTE Corp., et al.*, 00 CIV 4117 (the "D'elia Action");

*Panzella v. GTE Corp., et al.*, 00 CIV 4557 (the "Panzella Action");

*Gladstone v. GTE Corp., et al.*, 00 CIV 5224 (the "Gladstone Action").

3. The caption of these consolidated actions shall be *"In re GTE Corporation Securities Litigation"* and the files of these consolidated actions shall be maintained in one file under Master File No. 00 Civ. 3863(DAB). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in

the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

4. Every pleading filed in the consolidated actions, or in any separate action included herein, shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
In re GTE CORP. SECURITIES LITIGATION
This Document Relates To:
00 Civ. 3836(DAB)

5. When a pleading is intended to be applicable to all actions governed by this Order, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above.

6. When a pleading is filed and the caption shows that it is applicable to All Actions, the clerk shall file such pleading in the Master File and note such filing on the Master Docket. No further copies need to be filed, and no other docket entries need be made.

7. When a pleading is filed and the caption shows that it is to be applicable to fewer than all of the consolidated actions, the Clerk will file such pleading in the Master File only but shall docket such filing on the Master Docket and the docket of each applicable action.

8. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might be consolidated as part of *In re GTE Corp. Securities Litigation.*

9. The Weinstein Plaintiffs Group's motion for appointment as Lead Plaintiff is GRANTED.

10. The Weinstein Plaintiff Group is directed to propose one law firm as Lead Counsel within 30 days of the date of this Order.

11. Plaintiffs shall file a Consolidated Complaint within 30 days of the date of this Order.

12. Defendants shall move or answer within 30 days after filing of the Consolidated Complaint.

13. The Clerk is directed to serve a copy of this Order on all parties of record in the consolidated actions.

SO ORDERED.