Sol WEINBERG, individually and on behalf of all others similarly situated, Plaintiff,

v.

ATLAS AIR WORLDWIDE HOLDINGS, INC., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth, and Morgan Stanley Dean Witter, Defendants.

George Foxhall, individually and on behalf of all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., F/K/A Atlas Air, Inc., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth, and Stanley J. Gadek, Defendants.

Thomas Ingoglio, individually and on behalf of all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., Richard H. Shuyler, Brian Rowe, Douglas A. Carty Defendants.

Barry Zemel, CPA Money Purchase Plan & Trust DTD 2/1/89, on behalf of himself and all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth and Stanley J. Gadek, Defendants.

John Colby, individually and on behalf of all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., F/K/A Atlas Air, Inc., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth, and Stanley J. Gadek, Defendants.

---

Linda J. Baccheschi, on behalf of herself and all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth, and Morgan Stanley Dean Witter, Defendants.

Benjamin H. Troemel, on behalf of himself and all others similarly situated, Plaintiff,

v.

Atlas Air Worldwide Holdings, Inc., Richard H. Shuyler, James T. Matheny, Brian Rowe, Douglas A. Carty, Stuart G. Weinroth and Stanley J. Gadek, Defendants.

Nos. 02 Civ. 8334(WCC), 02 Civ. 8455(WCC), 02 Civ. 8482(WCC), 02 Civ. 8566(WCC), 02 Civ. 8622(WCC), 02 Civ. 9232(WCC), 02 Civ. 9840(WCC).

United States District Court, S.D. New York.

May 19, 2003.

Wolf Popper, LLP, New York City, Robert C. Finkel, Of Counsel, Attorneys for Plaintiff, Sol Weinberg.

Bernstein, Liebhard & Lifshitz, LLP, New York City, Joseph R. Seidman, Jr., Of Counsel, Liaison Counsel for Plaintiff, Messner & Smith.

Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Samuel H. Rudman, Of Counsel, Attorneys for Plaintiffs, Massachusetts State Carpenters Pension Fund and

Massachusetts State Guaranteed Annuity Fund.

### *OPINION AND ORDER*

·WILLIAM C. CONNER, Senior District Judge.

The matter before this Court is the proposed consolidation of the above captioned actions and any related matters and the appointment of Lead Plaintiff and Lead Counsel in this securities class action against defendant Atlas Air Worldwide Holdings, Inc. ("Atlas Air") pursuant to FED. R. CIV. P. 42(a), § 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act") and § 21D of the Securities Exchange Act of 1934, ("Exchange Act") each as amended by the Private Securities Litigation Reform Act ("PSLRA"). Atlas Air is being sued for violations of §§ 10(b) and 20(a) of the Exchange Act, Rule 10b–5 promulgated under § 10(b) and §§ 11, 12(a)2 and 20(a) of the Securities Act.

The following parties have moved for appointment as Lead Plaintiff and Lead Counsel respectively: 1) Sol Weinberg ("Weinberg") and the law firm of Wolf Popper, LLP; 2) Messner & Smith ("Messner") and the law firm of Schiffrin & Barroway, LLP and 3) The Massachusetts State Carpenters Pension Fund and the Massachusetts State Guaranteed Annuity Fund for Consolidation (collectively the "Pension Fund") and the law firm of Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss").[1] After submitting separate moving papers for appointment as Lead Plaintiff, Messner and the Pension Fund informed the Court that they planned to seek appointment as joint Lead Plaintiffs, with Schiffrin & Barroway and Milberg Weiss seeking appointment as co-Lead Counsel. For the reasons stated below, the Court grants the motion for consolidation, appoints Messner as Lead Plaintiff and Schiffrin & Barroway, LLP as Lead Counsel.

### BACKGROUND

Atlas Air is a Delaware corporation with its principal place of business in Purchase, New York. (Pl. Messner Mem. Supp.App. Lead Pl. at 3.) It provides aircraft, crew, maintenance and insurance for airlines. (*Id.*) Plaintiffs, who purchased shares of Atlas Air common stock during the designated class period from April 18, 2000 through October 15, 2002, claim that Atlas Air materially overstated its financial results during the class period. (*Id.;* Pl. Weinberg Mem. Supp.App. Lead Pl. at 1–2.)

On the morning of October 16, 2002, Atlas Air announced that it would be initiating a re-audit of its financial statements for the fiscal years 2000 and 2001. (Pl. Messner Mem. Supp.App. Lead Pl. at 3; Pl. Weinberg Mem. Supp.App. Lead Pl. at 2.) Atlas Air stated that its preliminary indications were that the cumulative impact through 2001 would reduce after-tax income by roughly $60 million to $65 million. (Pl. Messner Mem. Supp.App. Lead Pl. at 3; Pl. Weinberg Mem. Supp.App. Lead Pl. at 2.) That day, Atlas Air stock fell $0.79 per share and the stock ultimately traded as low as $1.71 per share, more than $40.00 below its highest trading price during the class period. (Pl. Messner Mem. Supp.App. Lead Pl. at 3; Pl. Weinberg Mem. Supp.App. Lead Pl. at 3.)

Now, Messner jointly moves with the Pension Fund to consolidate the actions and to be appointed co-Lead Plaintiffs, with their aforesaid law firms acting as co-Lead Counsel. Messner claims to have lost approximately $4,380,419.00 and the Pension Fund claims to have lost $542,724.58 on purchases of Atlas Air stock during the class period due to the alleged misstatements. (Pl. Messner Mem. Supp.App. Lead Pl. at 6; Pl. Pension Fund Mem. Supp.App. Lead Pl. at 1.)

Weinberg also seeks to be Lead Plaintiff, or in the alternative, to be appointed Lead Plaintiff for the Securities Act claims. (Pl. Weinberg Reply Mem. Supp.App. Lead Pl. at 9.) Atlas Air issued a September Prospectus and a May Prospectus, both demonstrating substantial quarterly and annual growth, which Weinberg alleges to be false, and which are now the subject of the re-audit. (Pl. Weinberg Mem. Supp.App. Lead Pl. at

---

1. Plaintiffs John Avey and Thomas Ingoglia also moved jointly for Lead Plaintiff but subsequently withdrew their motion.

3.) Public offerings followed each prospectus, one in May of 2000 and the other in September of 2000. Weinberg bought stock based on the September Prospectus and bases the Securities Act claims on that purchase. He argues that he is the only one of the purported plaintiffs who has standing to pursue these claims because neither Messner nor the Pension Fund purchased Atlas Air shares in the September 2000 secondary public offering pursuant to the September 2000 Prospectus, and therefore neither can sue on the Securities Act claims. (*Id.* at 6.) Weinberg claims a loss of $42,100. (*Id.* at 5.)

## DISCUSSION

### I. *Consolidation*

■ Actions in federal court may be consolidated when there are common questions of law or fact. FED. R. CIV. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.1990). Here, all plaintiffs are purchasers of Atlas Air securities who relied on what they claim to be materially false and misleading statements and omissions during the class period. (Pl. Messner Mem. Supp.App. Lead Pl. at 43; Pl. Weinberg Mem. Supp. App. Lead Pl. at 3.) Accordingly, all related actions are consolidated.

### II. *Standards for Appointing Lead Plaintiff*

The PSLRA governs the appointment of Lead Plaintiff and provides specific requirements that must be met. *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 119–20 (S.D.N.Y.2002). The PSLRA requires the Court to adopt a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

First, the PSLRA requires that the plaintiff who filed the initial complaint must, no later than twenty days from when it was filed, publish a notice to the class informing class members of their right to make a motion for Lead Plaintiff within sixty days. 15 U.S.C. § 78u–4(a)(3)(A)(i).

A notice was published on Primezone Media Network on October 18, 2002 stating that a securities fraud class action against Atlas Air was commenced in the Southern District of New York and that any member of the class who desired to be Lead Plaintiff must file a motion with the Court by December 17, 2002. (Pl. Weinberg Mem. Supp.App. Lead Pl., Ex. 2.) All moving plaintiffs made their motions on December 17, 2002, within the 60–day time limit, and are therefore timely.

Second, the Court must determine who has the largest financial interest. Messner claims a loss of $4,380,419.00 and the Pension Fund claims a loss of $542,724.58 based on their claims of Exchange Act violations. Weinberg claims a loss of $42,100.00 based on his claims of Securities Act violations. Clearly Messner's loss is the most substantial in general, but Weinberg's argument that he should be Lead Plaintiff, or co-Lead Plaintiff because he has the greatest losses based on the Securities Act violations will be addressed below.

■ Third, the Lead Plaintiff must satisfy Rule 23, which provides that one or more members of a class may sue on behalf of all class members if: 1) the class is so numerous that joinder is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the class and 4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23. The moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met. *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y.2001). In fact, a "wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *In*

*re Party City,* 189 F.R.D. 91, 106 (D.N.J. 1999) (quoting *Fischler v. AmSouth Bancorporation,* No. 96–1567–Civ–T–17A, 1997 WL 118429, at *2 (M.D.Fla. Feb.6, 1997)).

■ Typicality is satisfied when the moving plaintiff's injuries arose from the same course of conduct of the defendant that injured the other class members. *In re Crayfish,* 2002 WL 1268013, at *5. It is important to note, however, that the Lead Plaintiff's claims do not have to be identical to the other class members' claims. *Id.*

■ The adequacy requirement is satisfied where: 1) class counsel is qualified, experienced, and generally able to conduct the litigation; 2) the class members' interests are not antagonistic to one another; and 3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy. *Weltz,* 199 F.R.D. at 133 (S.D.N.Y.2001).

■ All three moving plaintiffs satisfy the typicality requirement because they all claim to have suffered significant losses from the material misstatements of Atlas Air during the class period. In addition, all moving plaintiffs have competent, experienced counsel, the class members' interests are not antagonistic to one another and they all have sufficient interest in the outcome of the case to advocate vigorously.

The PSLRA provides that the presumption as to the most adequate plaintiff may be rebutted upon proof that a would-be plaintiff will either not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

At this point, we conclude that the moving plaintiffs have satisfied the requirements under the PSLRA, with Messner having the largest financial interest based on the Exchange Act claims and Weinberg having the largest financial interest based on the Securities Act claims. This leads us to address the issue of whether there should be multiple Lead Plaintiffs to address different claims, also known as "niche plaintiffs," and further, whether Messner and the Pension Fund should be co-Lead Plaintiffs and whether

Weinberg has sufficiently rebutted the presumption of adequacy.

**A. *Niche Plaintiffs***

■ Weinberg argues that he is the only moving plaintiff with standing to assert Securities Act violations based on his purchase of securities in the September 2000 secondary public offering pursuant to the September 2000 Prospectus. He argues that if he is not appointed as Lead Plaintiff, the Securities Act claims may be prematurely dismissed. (Pl. Weinberg Mem. Supp.App. Lead Pl. at 8.) He argues further that he is the only moving plaintiff with standing to sue Morgan Stanley, the sole underwriter of the September 2000 secondary public offering. (*Id.* at 9.) Different pleading standards, Weinberg urges, will also be required and because neither Messner nor the Pension Funds will benefit from recovery on the Security Act claims, they will not be motivated to litigate them aggressively. (*Id.* at 9; Pl. Weinberg Reply Mem. Supp.App. Lead Pl. at 4.)

The cases Weinberg sets forth to substantiate his argument that the Securities Act claims may be prematurely dismissed if he is not appointed lead counsel are not on point. *See In re Paracelsus Corp. Sec. Litig.,* 6 F.Supp.2d 626, 631 (S.D.Tex.1998); *Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 965 (9th Cir.1990); *In re Storage Tech. Corp. Sec. Litig.,* 630 F.Supp. 1072, 1078 (D.Colo. 1986). These cases involve Securities Act claims dismissed because *none* of the plaintiffs had standing to bring suit. It is well established that the Lead Plaintiff's claims do not have to be identical to the other class members' claims and in fact, the idea that there should multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District. *In re Crayfish,* 2002 WL 1268013, at *5; *In re Initial Pub. Offering Sec. Litig.,* 214 F.R.D. 117 at 123–25.

Weinberg also cites a Southern District of Texas case where the court did appoint two Lead Plaintiffs—the two moving plaintiffs with the largest financial loss under each of the acts (the Securities Act and Exchange Act). *In re Landry's Seafood Rest.,* No. H–99–1948, 2000 U.S.Dist. LEXIS 7005, at *1

(S.D.Tex. Mar. 30, 2000); (Pl. Weinberg Mem. Supp.App. Lead Pl., Exs. 4–5.) However, the same court two years later held that based on its understanding of the PSLRA, only one Lead Plaintiff or a Lead Plaintiff comprised of a small cohesive group for a single class should be appointed even though some plaintiffs' causes of action had "substantial issues of materiality, causation and damages that [were] unique." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D.Tex.2002). Consequently, the court decided that "the litigation should proceed as a unified class with a strong Lead Plaintiff" until the time for class certification when, if appropriate, the parties may file new requests for subclasses or separate representatives. *Id.* ("Thus their requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of the common facts and legal issues here, would undermine the purpose of the PSLRA. Therefore the Court denies the motions of the 'Niche Plaintiffs'...."); *In re MicroStrategy Inc. Sec. Litig.*, 110 F.Supp.2d 427, 440 (E.D.Va.2000) ("To the extent a subclass or classes represented by separate counsel are required for the proper administration of this litigation and representation of the members of the class, that issue may be addressed at a later stage pursuant to Rule 23, Fed.R.Civ.P."). Moreover, this Court has acknowledged that the plaintiff with the largest financial interest may not have standing to sue on all claims but noted that there was no need to file a separate lawsuit when a subclass would suffice. *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 122–23.[2]

We recognize that all causes of action must be prosecuted vigorously, but at this stage only one Lead Plaintiff is necessary. Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation and "obstruct any efficient and controlled progress." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 451. In sum, there is no need to appoint multiple Lead Plaintiffs in order to represent different causes of action when subclasses or separate representatives may be appointed, if necessary, as the litigation proceeds.

## B. *Joint Lead Plaintiff*

■ Weinberg argues that there is no need to have both Messner and the Pension Fund as Lead Plaintiff. (Pl. Weinberg Reply Mem. Supp.App. Lead Pl. at 5.) We agree. Messner and the Pension Fund have identical claims against Atlas Air and there is no need to have them both as Lead Plaintiff. *Roth v. Knight Trading Group, Inc.*, 228 F.Supp.2d 524, 531 (D.N.J.2002). There is nothing to indicate that the overall quality of the action will be improved by having multiple Lead Plaintiffs. *EZRA Charitable Trust v. Rent–Way, Inc.*, 136 F.Supp.2d 435, 444 (W.D.Pa.2001). In fact, this Court has held that multiple Lead Plaintiffs contravene the purpose of the PSLRA. *In re Donnkenny, Inc., Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997).

> To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing lead plaintiff. One of the principal legislative purposes of the [Reform Act] was to prevent lawyer driven litigation ... To allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.

*Id.*

Therefore, there will no be niche plaintiffs in this action and there is no need to have both Messner and the Pension Fund serve as co-Lead Plaintiffs. Therefore, because Messner has the greatest financial interest and otherwise satisfies the PSLRA requirements, it is presumably the most adequate plaintiff.

---

**2.** The Court went on to distinguish between a Lead Plaintiff and a Class Representative and approved the idea of designating a Class Representative who is not a Lead Plaintiff. *Id.* at 123 ("Nowhere is it suggested that the concept of 'lead plaintiff' was intended to be coterminous with 'named plaintiffs' or 'class representatives.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 380–81 (S.D.N.Y.2000).

### III. *Rebutting the Presumption*

■ Weinberg presents several arguments challenging Messner's ability to fairly and adequately protect the interests of the class including: 1) Messner's status as an investment advisor deprives it of standing to prosecute the Exchange Act claims; 2) Messner has failed to identify the real parties in interest; 3) Messner continues to own Atlas Air stock and 4) A conflict of interest exists because Messner and its counsel are currently appointed as lead counsel in a derivative action on behalf of Atlas Air. (Pl. Weinberg Reply Mem. Supp.App. Lead Pl. at 2.)

Weinberg argues that the certificate submitted in support of Messner's application to be appointed Lead Plaintiff, representing that Messner "has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring suit to recover for investment losses" is inadequate to establish standing. (Pl. Weinberg Reply Mem. Supp.App. Lead Pl. at 9; Pl. Messner Mem. Supp.App. Lead Pl., Ex. A.)

■ Generally, a client's grant of authority to an investment manager to purchase stock on his or her behalf does not also confer authority to commence suit on his or her behalf. *Smith v. Suprema Specialties,* 206 F.Supp.2d 627, 634–35 (D.N.J.2002). However, when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the "purchaser" under the federal securities laws with standing to sue in its own name. *EZRA Charitable Trust,* 136 F.Supp.2d at 442; *compare with In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,* 209 F.R.D. 353, 358 (S.D.N.Y.2002) (distinguishing *EZRA Charitable Trust* on the grounds that the investment advisor was the attorney-in-fact). The *EZRA Charitable Trust* court relied on a declaration stating that the investment manager was the attorney-in-fact with authorization to bring suit to recover for investment losses. *Id.* at 441. Similarly here, the affidavit of Sean M. Handler, of the firm of Schiffrin & Barroway, includes the signed declaration of Ellis Smith of Messner stating that Messner is the attorney-in-fact for its clients with full power to bring suit for their investment losses. (Pl. Messner Mem. Supp. App. Lead Pl., Ex. A.) Thus, Messner does have standing to prosecute their Exchange Act claims asserted here.

In a related argument, Weinberg contends that Messner does not have standing because it failed to identify the real parties in interest pursuant to FED. R. CIV. P. 17, which states that every action shall be prosecuted in the name of the real party in interest. (Pl. Weinberg Response to Surreply at 7.) Weinberg argues that even if Messner has authority to bring suit on behalf of its clients, it still must identify the beneficial owners for whom it sues. (*Id.*)

■ The purpose of Rule 17 is to ensure that the defendant will be afforded the protection of res judicata when the action ends. *In EZRA Charitable Trust,* 136 F.Supp.2d at 443. The *EZRA Charitable Trust* court held that because the investment manager was in privity with its clients, the defendant "would be afforded the protection of res judicata upon the conclusion of this suit, and therefore ... the Rule 17(a) standard is met." (*Id.*) Similarly here, Messner is in privity with its clients as it has "complete investment authority" and is the "attorney-in-fact with full power and authority to bring suit to recover for investment losses." (Pl. Messner Mem. Supp.App. Lead Pl., Ex. A.) Therefore, the requirement of Rule 17(a) is met.

Next, Weinberg argues that Messner cannot fairly and adequately represent the class when it still owns Atlas Air stock. The Second Circuit has addressed this issue and has held that there is no "conflict of interest between those who have retained their ... shares and those who have since sold them." *Herbst v. Int'l Tel. & Tel. Corp.,* 495 F.2d 1308, 1314 (2d Cir.1974). Similarly, this Court has described a defrauded shareholder as wearing two hats, "but that his personal interest far overshadows his interest as an equity holder." *Herbst v. Able,* 47 F.R.D. 11, 15 (S.D.N.Y.1969). Moreover, the court noted that a class member with large holdings of stock can request exclusion from the class. *Id.* Thus, we conclude that Messner can adequately represent the class while still holding Atlas Air stock.

Finally, Weinberg claims there is a conflict of interest because Messner and its counsel are currently representing Atlas Air in a derivative suit. Messner and its counsel have withdrawn from the derivative action making this argument moot. (Messner & Pension Fund Surreply at 2.)

In sum, Weinberg has failed to rebut the presumption that Messner is the most adequate plaintiff.

## IV. *Lead Counsel*

█ The PSLRA directs that the Lead Plaintiff shall select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u–4(a)(3)(B)(v). Having reviewed the resume of the firm of Schiffrin & Barroway, we find it qualified to represent the class members in this securities class action. Schiffrin & Barroway has specialized in complex securities transactions for fifteen years representing individual and institutional stockholders in both state and federal court. (Pl. Messner Mem. Supp.App. Lead Pl., Ex. D.) We find that Schiffrin & Barroway has the requisite experience and expertise to serve as Lead Counsel.[3]

### CONCLUSION

For the above stated reasons, Messner's motion for consolidation and for appointment as Lead Plaintiff and of Schiffrin & Barroway as Lead Counsel is granted while the similar motions of Sol Weinberg and the Massachusetts State Carpenters Pension Fund and the Massachusetts State Guaranteed Annuity Fund for Consolidation are denied.

SO ORDERED.

---

**3.** In its moving papers, Messner had requested the appointment of Bernstein Liebhard & Lefshitz, LLP as Liaison Counsel, but after joining with the Pension Fund for appointment as co-Lead Plaintiffs, Messner no longer sought Liaison Counsel. Because we have found no need for more than one Lead Plaintiff, Messner's original request for appointment of Liaison Counsel is granted. Bernstein Liebhard & Lefshitz, LLP is a New York firm specializing in shareholder class actions and derivative actions.